**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| KATHLEEN MURPHY, Individually and for Others Similarly Situated<br><br>v.<br><br>LIFEPOINT HEALTH, INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Kathleen Murphy (Murphy) brings this collective action to recover unpaid overtime and other damages from LifePoint Health, Inc. (LifePoint).

2. Murphy worked for LifePoint as an Access Specialist Registered Nurse.

3. Like the Putative Class Members (as defined below), Murphy regularly worked more than 40 hours in a week.

4. But LifePoint did not pay for all the hours they worked.

5. Instead, LifePoint automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

6. Murphy and the Putative Class Members were thus not paid for that time.

7. But LifePoint fails to provide Murphy and the Putative Class Members with *bona fide* meal breaks.

8. Instead, LifePoint requires Murphy and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9. LifePoint's auto-deduction policy violates the Fair Labor Standards Act (FLSA) by depriving Murphy and the Putative Class Members of overtime pay for all overtime hours worked.

**JURISDICTION & VENUE**

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over LifePoint because LifePoint is domestic corporation.

12. Venue is proper because LifePoint, a Delaware corporation, resides in this District. 28 U.S.C. § 1391(b)(1).

**PARTIES**

13. Murphy worked for LifePoint as an Access Specialist Registered Nurse in Florence, Alabama from approximately March 2020 until August 2021.

14. Throughout her employment, LifePoint classified Murphy as non-exempt and paid her on an hourly basis.

15. But LifePoint subjected Murphy to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

16. Murphy's written consent is attached as **Exhibit 1**.

17. Murphy brings this action on behalf of herself and other similarly situated hourly, non-exempt LifePoint employees who were subject to LifePoint's automatic meal break deduction policy.

18. LifePoint uniformly requires all these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

19. The collective of similarly situated employees is defined as:

> **All hourly, non-exempt LifePoint employees who received an automatic meal period deduction at any time during the past 3 years ("Putative Class Members" or "Putative Class").[1]**

20. LifePoint is a Delaware corporation that maintains its headquarters in Brentwood, Tennessee.

21. LifePoint may be served with process by serving its registered agent: **The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801**.

### COVERAGE UNDER THE FLSA

22. At all relevant times, LifePoint was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, LifePoint was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, LifePoint was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, equipment, computers, cellphones, and personal protective equipment – that have been moved in or produced for commerce.

25. At all relevant times, LifePoint has had an annual gross volume of sales made or business done of not less than $500,000 each year.

26. At all relevant times, Warren and the Putative Class Members were engaged in

---

[1] The Putative Class expressly excludes any individuals who opted into *Kurtz v. RCCH Trios Health, LLC, et al.*, No. 4:19-CV-05049-MKD (E.D. Wash.).

commerce or in the production of goods for commerce.

27. LifePoint uniformly deducted 30 minutes/shift from Murphy and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

28. As a result, LifePoint failed to pay Murphy and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

29. LifePoint's automatic meal break deduction policy, which deprives Murphy and the Putative Class Members of overtime compensation for the weeks in which these employees work over 40 hours, is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

30. LifePoint bills itself as a "national diversified healthcare delivery network with facilities from coast to coast."[2]

31. LifePoint employs patient care workers, including Murphy and the Putative Class Members, to provide healthcare services and treat the patients in its various facilities.

32. LifePoint uniformly classifies these employees as non-exempt from overtime and pays them on an hourly basis.

33. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

34. For example, Murphy worked for LifePoint as an Access Specialist Registered Nurse in Florence, Alabama from approximately March 2020 until August 2021.

35. As an Access Specialist Registered Nurse, Murphy's primary responsibilities included providing direct patient care to LifePoint's patients, such as transferring patients between LifePoint

---

[2] https://lifepointhealth.net/who-we-are (last visited March 29, 2023).

facilities, monitoring patients, charting treatments, reviewing patient histories, and assisting doctors and other patient care staff to provide healthcare services.

36. Throughout her employment, LifePoint classified Murphy as non-exempt and paid her on an hourly basis.

37. Throughout her employment, LifePoint subjected Murphy to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

38. Murphy and the Putative Class Members performed their jobs under LifePoint's supervision, and using materials, equipment, and technology approved and supplied by LifePoint.

39. LifePoint requires Murphy and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

40. At the end of each pay period, Murphy and the Putative Class Members received wages from LifePoint that were determined by common systems and methods that LifePoint selected and controlled.

41. LifePoint requires its hourly, non-exempt employees, including Murphy and the Putative Class Members, to record their hours worked using LifePoint's timeclock system.

42. Further, LifePoint subjects its hourly, non-exempt employees, including Murphy and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

43. Specifically, LifePoint automatically deducts 30 minutes from Murphy and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

44. But LifePoint fails to provide Murphy and the Putative Class Members with *bona fide* meal periods.

45. Instead, LifePoint requires Murphy and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

46. This unpaid time is compensable under the FLSA because LifePoint knew, or should have known, that (1) Murphy and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 consecutive minutes.

47. LifePoint failed to exercise its duty to ensure Murphy and the Putative Class Members were not performing work that LifePoint did not want performed during their unpaid "meal breaks."

48. Despite accepting the benefits, LifePoint did not pay Murphy and the Putative Class Members for the compensable work they performed during their "meal breaks."

49. Thus, under LifePoint's uniform automatic meal break deduction policy, Murphy and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA.

50. LifePoint knows Murphy and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because LifePoint expects and requires these employees to do so.

51. But LifePoint does not pay Murphy and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

52. Murphy worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

53. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

54. Indeed, LifePoint typically schedules Murphy and the Putative Class Members to work 12-hour shifts for up to 4 days a week.

55. And Murphy and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and patient care responsibilities.

56. As a result, Murphy and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

57. When Murphy and the Putative Class Members worked more than 40 hours in a workweek, LifePoint did not pay them 1.5 times their regular hourly rate for all overtime hours worked because LifePoint failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

58. LifePoint knew, or should have known, it was subject to the FLSA, including its overtime provisions.

59. LifePoint knew, or should have known, the FLSA requires it to pay employees, including Murphy and the Putative Class Members, overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

60. LifePoint knew, or should have known, Murphy and the Putative Class Members worked more than 40 hours in a week.

61. LifePoint knew, or should have known, Murphy and the Putative Class Members regularly worked during their unpaid meal breaks because LifePoint expected and required them to do so.

62. LifePoint knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

63. LifePoint knowingly, willfully, and/or in reckless disregard carried out this illegal automatic deduction policy that deprived Murphy and the Putative Class Members of overtime compensation in violation of the FLSA.

64. Nonetheless, LifePoint failed to pay Murphy and the Putative Class Members overtime for all hours these employees worked in excess of 40 hours in a workweek.

65. LifePoint's failure to pay Murphy and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime for all overtime hours worked made in good faith.

## COLLECTIVE ALLEGATIONS

66. Murphy brings her claims as a collective action under the FLSA.

67. The Putative Class Members were victimized by LifePoint's pattern, practice, and/or policy which is in willful violation of the FLSA.

68. Other Putative Class Members worked with Murphy and indicated they were paid in the same manner, performed similar work, and were subject to LifePoint's uniform automatic meal break deduction policy.

69. Based on her experiences with LifePoint, Murphy is aware LifePoint's illegal practices were imposed on the Putative Class Members.

70. The Putative Class Members are similarly situated in all relevant respects.

71. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

72. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

73. Rather, the Putative Class is held together by LifePoint's uniform automatic meal break deduction policy that systematically deprived Murphy and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

74. The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

75. The overtime owed to Murphy and the Putative Class Members will be calculated using the same records and using the same formula.

76. Murphy and the Putative Class Members sustained damages arising out of LifePoint's illegal and uniform employment policy.

77. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to LifePoint's records, and there is no detraction from the common nucleus of liability facts.

78. Therefore, the issue of damages does not preclude collective treatment.

79. Murphy knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

80. LifePoint is liable under the FLSA for failing to pay overtime to Murphy and the Putative Class Members.

81. Consistent with LifePoint's illegal automatic meal break deduction policy, Murphy and the Putative Class Members were not paid the proper premium overtime compensation for all overtime hours worked.

82. As part of its regular business practices, LifePoint intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Murphy and the Putative Class Members.

83. LifePoint's illegal automatic meal break deduction policy deprived Murphy and the Putative Class Members of overtime wages for all hours worked in excess of 40 hours in a workweek, which they are owed under federal law.

84. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

85. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

86. Those similarly situated employees are known to LifePoint, are readily identifiable, and can be located through LifePoint's records.

## CAUSE OF ACTION
## VIOLATIONS OF THE FLSA

87. Murphy realleges and incorporates all other paragraphs by reference.

88. Murphy brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

89. LifePoint violated, and is violating, the FLSA by failing to pay Murphy and the Putative Class Members overtime for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

90. Throughout the relevant period, LifePoint expected and required Murphy and the Putative Class Members to remain on-duty through their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

91. Murphy and the Putative Class Members have been harmed as a direct and proximate result of LifePoint's unlawful conduct because they have been deprived of wages owed for work that they performed and from which LifePoint derived a direct and substantial benefit.

92. LifePoint knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Murphy and the Putative Class Members overtime compensation for all overtime hours worked.

93. LifePoint's failure to pay these employees overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay them overtime compensation for all overtime hours worked made in good faith.

94. Accordingly, Murphy and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### JURY DEMAND

95. Murphy demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Murphy, individually and on behalf of the Putative Class Members, seeks the following relief:

    a. An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. An Order pursuant to Section 16(b) of the FLSA finding LifePoint liable for unpaid back wages due to Murphy and the Putative Class Members and for liquidated damages in an amount equal to their unpaid compensation;

    c. Judgment awarding Murphy and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

   d.  An Order awarding attorney's fees, costs, and expenses;

   e.  Pre- and post-judgment interest at the highest applicable rates; and

   f.  Such other and further relief as may be necessary and appropriate.

Dated: March 30, 2023.

Respectfully submitted,

**FARNAN LLP**

By: */s/ Michael J. Farnan*
Sue L. Robinson (Bar No. 100658)
Brain E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, Delaware 19801
302-777-0300 – Telephone
302-777-0301 – Facsimile
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjoesphson@mybackwages.com
adunlap@mybackwages.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF & THE PUTATIVE CLASS MEMBERS**